SALLEE v. DALTON.

## Opinion delivered May 5, 1919.

1. HIGHWAYS—IMPROVEMENT DISTRICT—TERRITORY INVOLVED.—Acts 1919, No. 135, creating a highway improvement district covering territory described as "all of Randolph County west of Current and Black rivers," means all of the territory west of Current river down to its junction with Black river, and all west of Black river below that point.

2. SAME—HIGHWAY DISTRICT—SINGLENESS OF PROJECT.—Acts 1919, No. 135, providing for eleven different roads radiating from the county seat, *held* to be a legislative declaration of the singleness of the project, and not obviously erroneous or arbitrary.

3. SAME—HIGHWAY DISTRICT—INVASION OF COUNTY COURT'S JURISDICTION.—The act above mentioned does not invade the jurisdiction of the county court merely because it includes the greater portion of the county and the major portion of the public roads.

4. SAME—HIGHWAY DISTRICT—JURISDICTION OF COUNTY COURT.—The jurisdiction of the county court is not invaded by an act which provides that commissioners appointed by the Legislature might vary routes of established public roads or establish new routes, provided the county court has the discretion to adopt any proposed variation from the old routes and any new roads.

5. STATUTES—CONSTRUCTION.—Statutes should be so contrued, if possible, that they may not conflict with the Constitution.

6. SAME—INVALID PORTION.—Where an act provides that if any part of it shall be held to be unconstitutional it shall not affect the remainder of the act, this is an expression of the legislative will to put in force every part of the statute found to be constitutional and valid.

Appeal from Randolph Chancery Court; *Lyman F. Reeder*, Chancellor; affirmed.

*Jerry Mulloy*, for appellant.

1. The act is unconstitutional and void. From its language it cannot be determined with any degree of certainty the territory comprised in the district or meant. The language is uncertain, indefinite and ambiguous. 86 Ark. 172; 110 S. W. 801; 60 *Id*. 27; 68 Ark. 462; 34 *Id*. 224. The territory should be clearly defined and bounded. 28 Cyc. 128-131, 180.

2.   A glance at the profile, which is an exhibit, shows that the territory included comprises from four-fifths to five-sixths of the entire area of Randolph County, or 633 square miles.   The act contemplates repair of old roads, the establishment and construction of many new ones, aggregating 110 miles, with necessary bridges and culverts.   Section 2 limits the expenditure to $3,000 per mile, such provision, however, not applying to the proposed roads from Pocahontas to McIlroy's Ferry and from Maynard to Richardson's Ferry and Bigger's Ferry, and not including interest on money borrowed. The most conservative estimate possible fixes the total expenditure at $330,000 and this wholly without regard for any additional cost which might be incurred in the improvement of the roads excepted from the limitation above referred to, the cost of bridges and cost of condemnation and laying out new and unestablished roads, and expenses of engineering, commissioners, attorneys' fees, etc., thus indicating an initial cost of say $380,000, or "frenzied finance."

3.   The act attempts to usurp the jurisdiction of the county courts.   Const., art. 7, § 28; 117 S. W. 544; 132 *Id.* 444; 89 Ark. 513; 177 S. W. 424.   The act is an infringement upon the constitutional authority of the county court and void.   Cases *supra.*   See also 50 Ark. 116; 6 S. W. 519; 97 Ark. 322; 86 *Id.* 1; 176 S. W. 676; 134 S. W. 618.   The Legislature cannot create a district, irrespective of its territorial extent, for the establishment of a new public road, and impose upon the county court the cost and maintenance of same.   132 S. W. 444; 117 *Id.* 544, and cases *supra;* 177 S. W. 424, etc.; 203 S. W. 260.

4.   The Legislature cannot add to or take from the constitutional jurisdiction of the court.   15 C. J. 858; 94 Ark. 65; 126 S. W. 90; 27 Ark. 202; 2 *Id.* 93; 117 S. W. 426.

*J. J. Lewis* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

There is no reason why the Legislature should not sanction the making of any number of improvements by

the same district. The decision in 86 Ark. 331 that an entire county could not be formed into one road district is *obiter*. 118 Ark. 294 does not apply. See 95 Ark. 496; 102 *Id.* 306; 125 Ark. 325; 201 S. W. 808; 209 *Id.* 81; 130 Ark. 507; 201 S. W. 808. The present act does not offend either the rule of territorial extent or surety. No new roads were laid out by the act. The county court on petition can still lay them out and the burden of maintaining them is still upon the county court. If new roads are opened or old ones changed the damages must be paid by the district. The words "all lands" cannot include personal property. The act is not void.

McCULLOCH, C. J.    The General Assembly of 1919 enacted a special statute (Act No. 135) creating a road improvement district in Randolph County designated as Western Randolph County Road Improvement District covering territory described as "all of Randolph County west of the Current and Black rivers." The statute authorizes the improvement of eleven connecting highways, four of which radiate from Pocahontas, the county site, and the others connect with those roads.

The validity of the statute is challenged by appellant, an owner of real property within the district, who instituted this action in the chancery court of Randolph County to restrain the commissioners of the district from proceeding to organize and construct the improvement and levy assessments, etc. The district covers about three-fourths of Randolph County, being, as shown in the record, all the uplands of the county, and the bottom lands of the county lie east of the rivers mentioned. Six of the roads are described in the statute as being old-established public roads, but the several routes for the other five roads are to be selected by the commissioners, the termini of each of those roads being, however, definitely stated. The first road mentioned in the statute is described as follows: "A road from Pocahontas to McIlroy's Ferry on Current River, following the old road as nearly as practicable." The other five

established roads are described in similar language, giving the termini of each, and the descriptive clause in each instance concludes with the words "following the old road as nearly as practicable."

The case was tried on an agreed statement of facts in which it is stipulated, among other things, that the roads "to be improved as mentioned and described in said act are now regularly established and existing public highways, and before any other or different route can be adopted by the commissioners of said district, the county court of said county must open, lay out and establish same in the manner required by law." It is contended here that the above clause of the agreement refers only to the six established roads, and not to the other five roads to be selected by the commissioners. We do not, however, deem that matter important under the view we take of the law applicable to the case. There are two of the sections (3 and 5) which are especially pertinent to the controversy, and which read as follows:

"Section 3. If any part of said road has not been laid out as a public road, it is hereby made the duty of the county court of Randolph County to lay the same out in accordance with Act No. 422 of the Acts of the General Assembly of the State of Arkansas for the year 1911, entitled 'An Act to amend section 7328 of Kirby's Digest of the Statutes of Arkansas,' approved May 31, 1911."

"Section 5. It is made the duty of said commissioners to proceed as rapidly as possible with the improvement of the road hereinbefore described, improving it in such manner as they deem to the best interests of the property owners, and they shall also maintain said road in good condition after its completion. As soon as possible, the commissioners of said district, shall form their plans for the improvement with the aid of the State Highway Department and of such engineers as they see fit to employ, and shall file the same with the county clerk of Randolph County, along with specifications and an estimate of the cost. If said commis-

sioners deem it to the best interests of the district to vary the line of the road, as hereinbefore laid out, they may report that fact to the county court of Randolph County, and in that event, if the county court approves of the report, it may make an order changing the route of the road, and if necessary, it shall, in that event, lay out the new road in the manner hereinbefore provided.''

It is first contended that the statute is void for the reason that the territory is not definitely described, in that there is a well-founded doubt whether or not the territory between the two rivers mentioned is to be included in the district. We do not think there is any ambiguity in the language of the statute or any doubt whatever about the territory to be embraced in the district. Black River flows southwesterly across the southeastern part of the county. Current River is west of Black River and also flows in a southwesterly direction and empties into the Black in Randolph County about midway between Pocahontas and the eastern line of the county. The language in the statute ''West of the Current and Black Rivers'' undoubtedly means all of the territory west of Current River down to its junction with Black and all west of Black below that point. It does not include the lands lying between the two rivers.

It is also contended that the territory is so extensive and covers such a great portion of the county, that it provides for so many different roads and is a project of such great magnitude that the improvement of these roads cannot be treated as a single improvement so as to be the subject-matter of one district. The statute constitutes a legislative determination of the singleness of the project, and we cannot say that the decision of the lawmakers is obviously erroneous and arbitrary. The roads, as before stated, radiate from the county site, which is the principal town in the county, and perhaps the center of population and business, and they afford transportation facilities for all of the lands of like character in the county. The other roads connect with the four main ones. The case is definitely ruled, we think,

by former decisions of this court. *Conway* v. *Miller County Highway & Bridge District,* 125 Ark. 325; *Bennett* v. *Johnson,* 130 Ark. 507; *Marshall* v. *Baugh,* 133 Ark. 64; *Tarvin* v. *Road Improvement District No. 1 of Perry County,* 137 Ark. 354, 209 S. W. 81.

The courts have nothing to do with the policy of creating large districts for the construction of improvements at enormous costs to the owners of land. That is a matter which addresses itself entirely to the Legislature, the presumption being that the will of the owners of property was considered in the enactment of the statute. The only thing with which we have to do is the question whether or not the act is within the constitutional powers of the Legislature.

The principal attack made on the validity of the statute is that it constitutes an invasion of the jurisdiction of the county court over the roads and highways conferred by the Constitution. Section 28, article 7, Constitution of 1874. It is said that this jurisdiction is invaded for the reason, first, that the greater portion of the county is covered by the district, and that it includes most of the roads and takes them out of the jurisdiction and control of the county court. Counsel for appellant rely on *Road Improvement District No. 1* v. *Glover,* 89 Ark. 513, and *Swepston* v. *Avery,* 118 Ark. 294, as sustaining their contention in this respect, but such is not, we think, the effect of those decisions. In the first of the cases just cited we held that the whole of a county could not be organized into an improvement district for the purpose of establishing new roads and imposing them upon the county court as a part of the highway system of the county. In the other case we decided that substantially all of a county could not be organized into an improvement district with authority to determine what roads should be improved and assess the cost of the improvement of any road selected by the commissioners of the district against the property of the district in proportion to its value. Here we have a different question presented. Certain roads are designated for im-

provement and the cost is to be imposed on the land in the district according to actual benefits, to be assessed by a board of assessors. The commissioners are authorized to vary the routes along established highways and to select routes for certain roads which are to be established, but, as will be presently shown, this is not authorized as against the judgment of the county court, and the statute does not authorize the establishment by the commissioners of public roads and imposing them on the county court as a part of the highway system of the county.

The other reason stated why the act constitutes an invasion of the jurisdiction of the county court is the one just suggested, viz., that it authorizes the commissioners to vary the routes of the public roads and to establish new roads. This, however, is not the effect of the statute, when properly interpreted. Sections 3 and 5, when considered together, show clearly that it was not the purpose of the lawmakers to compel the county court to accept the judgment of the Board of Commissioners in the selection of routes, but that, on the contrary, the county court is to exercise its judgment and discretion in that matter, and to act in accordance with the methods prescribed in another general statute. Kirby's Digest, section 7328, as amended by Act No. 422 of the session of 1911, is especially referred to, and that contains the authority of the county court in matters of establishing and altering public roads and points out the method of doing so. The statute now before us compels the county court to act upon the proposals to establish a new road or to vary the route of an old one, but does not compel the county court to adopt such proposals against its own discretion and judgment. The language of section 5 provides that the report of the plans for the improvements is to be filed with the county court. That section refers specifically to the changing of the routes or establishing roads in conferring specific authority upon the county court, providing that the county court must approve the report before it

orders the change in the route, but the section continues further to authorize the county court to lay out a new road.

We are of the opinion, therefore, that sections 3 and 5 should be read together, and that they do not absolutely impose the will of the commissioners upon the county court in the changing of roads or the establishment of new roads, but that the constitutional jurisdiction of the court itself is invoked by this statute instead of the statute constituting an invasion of the jurisdiction of the court.

In reaching this conclusion we are adopting the well-settled rule of interpretation stated by Judge Cooley in his work on Constitutional Limitations (7 ed., p. 236) and so often approved by this court as follows: "The duty of the court to uphold a statute when the conflict between it and the Constitution is not clear, and the implication which must always exist that no violation has been intended by the Legislature, may require it in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. For, as a conflict between the statute and the Constitution is not to be implied, it would seem to follow, where the meaning of the Constitution is clear, that the court, if possible, must give the statute such a construction as will enable it to have effect."

Of course, it goes without saying, that it constitutes no invasion of the jurisdiction of the county court to authorize the improvement of highways established by order of that court.

There is another reason why material parts, if not all, of this statute should be upheld, even if the assailed portions of the statute were void. There is a section of the statute which reads as follows: "Section 27. If for any reason any provision of this act shall be held to be unconstitutional, it shall not affect the remainder of the act; but the act, insofar as it is not in conflict with the Constitution, shall be suffered to stand."

In the case of *Snetzer* v. *Gregg,* 129 Ark. 542, we passed on the question of partial unconstitutionality of a statute and held that a provision similar to the one in the present statute, giving expression to the legislative will to put into force every part of the statute found to be constitutional and valid, was effective to preserve intact parts of statutes found to be valid, even though other portions of the same statute were violative of the Constitution.

This statute authorizes the assessment of the benefits to all lands in the district, and classifies as land "all railroads, tramroads, telegraph, telephone and pipe lines." No question is raised in the present litigation as to the correctness of that classification, and we do not decide that question. We merely mention it for the purpose of showing that it is not necessary to pass upon every provision of the statute in order to determine the constitutionality of those provisions which are expressly assailed in this litigation.

The chancery court was correct in deciding that the statute was not open to attack on the grounds herein discussed, and the decree is therefore affirmed.

HART, J., (dissenting). The dissent of Mr. Justice Wood and the writer in this case is that the act in question is mandatory in its terms and substitutes the judgment of the commissioners for the district for that of the county court in violation of article 7, section 28 of our Constitution, which reads as follows:

"The county court shall have exclusive original jurisdiction in all matter relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except cases otherwise herein provided."

In construing this section the court has uniformly held that, while the Legislature may prescribe the method of procedure in laying out public roads and altering those already established, it has no power to interfere with the discretion given the county court in the matter under the sections of the Constitution quoted above. *Road Improvement District No. 1* v. *Glover,* 89 Ark. 513; *Parkview Land Co.* v. *Road Improvement District No. 1,* 92 Ark. 93, and *Craig* v. *Greenwood District of Sebastian County,* 91 Ark. 274.

. In the last mentioned case the court said:

"The Constitution of the State wisely leaves it to the county court to determine when and where public roads shall be established and, when once established, what alterations thereof shall be made. Expense .of care of public highways cannot be forced upon a county, nor can compensation for land taken for such purposes be demanded of a county without the concurring judgment of the county court establishing the road."

This principle has been approved in our later decisions bearing on the question. In our judgment the majority opinion does not set out all the sections of the statute necessary for its correct interpretation. Therefore we set out sections 1, 3 and 5, which we consider necessary to a proper decision of the question of whether the statute takes away from the county court its discretion in laying out and establishing roads and altering those already established. Section 1 reads as follows:

"All of Randolph County west of Current and Black rivers be formed into a road improvement district for the purpose of macadamizing with crushed rock or gravel and with the necessary bridges, the following roads in Randolph County.

(1). A road from Pocahontas to McIlroy's Ferry on Current River, following the old road, as nearly as practicable.

(2). From Pocahontas to Maynard *via* Brockett, following the old road as nearly as practicable.

(3).  From Pocahontas to Elm's Store *via* Lorine, Eleven Points and Dalton, following old road as nearly as practicable.

(4).  From Pocahontas to Imboden *via* Birdell to Spring River, which is the county line between Randolph and Lawrence counties (Imboden being just across the river and in Lawrence County), following the old road as nearly as practicable.

(5).  A road from Dalton south to the intersection with the last named road, at the most convenient point.

(6).  A road from Dalton to Ravenden Springs, following the old road as nearly as practicable.

(7).  A road from Maynard southeast, dividing near Current River and going to Richardson's Ferry and Biggers' Ferry, following the old road as nearly as practicable.

(8).  A road from Pocahontas to Noland, following the Pocahontas and Imboden road to a point about two (2) miles west of Pocahontas thence in a southerly direction to Noland.

(9).  A road leaving the road between Pocahontas and Dalton at a point to be selected by the commissioners and running west across Eleven Point River to intersect the road running from Dalton to Imboden.

(10).  A road connecting Warm Springs with the road from Pocahontas to Maynard at a point to be selected by the commissioners.

(11).  A road from Maynard to the Missouri State line to be selected by the commissioners.

Said roads will follow the best route attainable and adhere to the existing roads as near as practicable."

Section 3 is as follows:

"Section 3.  If any part of said road has not been laid out as a public road, it is hereby made the duty of the county court of Randolph County to lay the same, out in accordance with Act No. 422 of the acts of the General Assembly of the State of Arkansas for the year 1911, entitled, 'An act to amend section 7329 of Kirby's

Digest of the statutes of Arkansas,' approved May 31, 1911."

Section 5 is as follows:

"Section 5. It is made the duty of said commissioners to proceed as rapidly as possible with the improvement of the road hereinbefore described, improving it in such manner as they deem to the best interests of the property owners, and they shall also maintain said road in good condition after its completion. As soon as possible, the commissioners of said district shall form their plans for the improvement with the aid of the State Highway Department and of such engineers as they see fit to employ, and shall file the same with the county clerk of Randolph County, along with specifications and an estimate of the cost. If said commissioners deem it to the best interests of the district to vary the line of the road, as hereinbefore laid out, they may report that fact to the county clerk of Randolph County, and in that event, if the county court approves of the report, it may make an order changing the route of the road, and if necessary, it shall, in that event, lay out the new road in the manner hereinbefore provided."

It is a cardinal rule of construction that an act should be read from its four corners in interpreting the language used by the Legislature. Section 1 of the act provides for the establishment and improvement of a road from Pocahontas to McIlroy's Ferry on Current River, following the old road as nearly as practicable. So, too, in the roads provided for in subdivision 2, 3, 4, 5, 6, and 7, the direction is that the old road shall be followed as nearly as practicable. It will be seen that gives the commissioners the power to change the old roads if the road as already established by the county court is not deemed practicable by them. This construction is borne out by the directions given in the subsequent subdivisions of section 1.

Subdivision 8 provides for a road from Pocahontas to Noland, following the Pocahontas and Imboden road to a point two miles west of Pocahontas, thence in a

southerly direction to Noland. It will be observed that the concluding part establishes a new road in a southerly direction to Noland.

Section 9 provides for a new road leaving the road between Pocahontas and Dalton at a point to be selected by the commissioners and running west across Eleven Point to intersect the road running from Dalton to Imboden.

Section 10 provides for a road connecting Warm Springs with a road from Pocahontas to Maynard at a point to be selected by the commissioners.

Section 11 provides a road from Maynard to the Missouri State line, to be selected by the commissioners.

So it will be seen that as to the last named four roads the commissioners are directed to lay out new roads. The section concludes by providing that said roads will follow the best route obtainable and adhere to the existing roads as near as practicable. This language plainly gives the commissioners power to lay out new roads and to alter those already established when in their judgment the existing road is not a practicable one. This, in effect, substitutes the judgment of the commissioners for that of the county court and is in direct violation of the section of the Constitution quoted above.

On this point in *Cox* v. *Road Imp. Dist. etc.*, 118 Ark. 119, the court, upon motion for a rehearing said:

"It is first contended that the proceeding is void because its purpose is to authorize the construction of new roads. If such is its purpose, then the proceedings are void. In the case of *Road Imp. Dist.* v. *Glover, supra,* it was held that road improvement districts could not be formed and authorized to lay out and establish new public roads and impose upon the county court the duty to maintain them."

It is said that section 3 still leaves it within the discretion of the county court as to whether new roads shall be laid out or alterations shall be made in old roads. We do not think the language of that section is susceptible to that construction. It plainly says that if

any part of said road has not been laid out as a public road, it is made the duty of the county court of Randolph County to lay the same out in accordance with the general act of the Legislature with reference to laying out public roads. It will be readily seen that the language is mandatory and makes it obligatory upon the county court to lay out the roads as established by the commissioners. Of course, it does direct the county court to follow the method of procedure prescribed by the general act in laying out roads, but this does not change the mandatory character of the language. It is in plain terms made the duty of the county court to lay out the roads as established by the commissioners. The direction to follow the usual mode of procedure in doing so does not leave any discretion to the county court in deciding whether or not the roads as established by the commissioners are to the best interest of the public.

This instruction is borne out by the language used in section 5. Section 5 gives the power to the commissioners to change the road after they have once established it. The language used is that if the commissioners deem it to the best interest of the district to vary the line of the roads as hereinbefore laid out, they may report that fact to the county clerk, and if the county court approves the report it may make an order changing the route of the road. The words ''as hereinbefore laid out'' refer to the first laying out of the roads by the commissioners provided for in section 1. The evident intention of the Legislature was to give the commissioners the power to change the road if they should later decide that they had made a mistake in laying it out as provided in section 1. We are of the opinion that the language of the act is mandatory, and has so limited the power of the county court with respect to laying out roads and altering those already established as to destroy its freedom of judgment in the matter.

It is clear from the language used that it was the intention to make any adjudication by the county court

the result of dictation by the commissioners, and this the Constitution does not allow.

As we have frequently said, this jurisdiction was appropriately given to the county court. Otherwise the conflicting interests of various towns and localities in the county through which the country roads run might prevent such a location of them as would be for the public good. Under our Constitution counties are units of government, and it was deemed best to place their internal affairs, and as well the laying out of roads, in the county courts, to the end that a uniform system of roads might be established which would best subserve the public interest.

As stated in *Thompson* v. *Grand Gulf Railroad and Banking Co.*, 3 Howard (Miss.) 240, "To determine between the Constitution and the Legislature is often embarrassing, and always demands a cautious and deliberate investigation. In the inquiry is involved the highest function of the judicial department. The acts of the Legislature should 'be sustained, if possible; the Constitution must be preserved inviolate."

Therefore we respectfully dissent from the opinion of the majority.