CUMNOCK v. ALEXANDER.

Opinion delivered June 9, 1919.

1. CONSTITUTIONAL LAW—BENEFITS FROM IMPROVEMENTS—LEGISLA-
TIVE QUESTION.—The question as to what lands will be benefited
by a particular improvement is a matter for the Legislature; the
courts being bound by recitals in statutes as to such benefits, ex-
cept for arbitrary or obvious and demonstrable mistakes.

2. HIGHWAYS—BENEFITS TO CITY—DISCRIMINATION.—Acts 1919, No.
436, creating Pulaski County Road Improvement District No. 10,
in providing that Little Rock shall be taxed for building roads
on the opposite side of the Arkansas River, is not an arbitrary
discrimination against the city, which has connection with roads
on the other side of the river by means of a free bridge.

3. HIGHWAYS—VALIDITY OF STATUTE—INVASION OF COUNTY COURT'S
JURISDICTION.—Acts 1919, No. 436, creating Pulaski County Road
Improvement District No. 10, dividing certain territory into sub-
districts and imposing on each district the duty of improving
certain roads located therein, is not an invasion of the jurisdic-
tion of the county courts, in view of provisions in the act making
the plans for the improvement subject to the order and judg-
ment of the county court.

4. HIGHWAYS—ROAD DISTRICT—BENEFITS.—Acts 1919, No. 436, is not
unconstitutional in providing that a road district be divided into
six subdistricts and that the general expenses inuring to the ben-
efit of all the subdistricts shall be borne by the several sections
in proportion that the cost of the work in each section bears to
the total cost in all sections.

5. HIGHWAYS—VALIDITY OF STATUTE—AUTHORITY TO CONSTRUCT NEW
ROADS.—Acts 1919, No. 436, creating Pulaski County Road Im-
provement District No. 10, is not objectionable in allowing the
commissioners to improve new roads, since they cannot be con-
structed without the approval of the county court.

6. HIGHWAYS—ROAD DISTRICT—IMPROVEMENT OF CITY STREETS.—Such
act is not invalid in providing for improvement of city streets as
well as rural roads.

7. HIGHWAYS—ROAD DISTRICT—VALIDITY OF STATUTE.—Nor is such
act invalid because certain lands in an adjoining county, not
taxed, will be benefited.

8. HIGHWAYS—DISTRICT—VALIDITY OF STATUTE.—Such act is not in-
valid as having conferred corporate entity and authority on the
district in violation of Constitution, article 12, section 2.

9. CONSTITUTIONAL LAW—VALIDITY OF STATUTE—PRESUMPTION.—All
doubts as to the constitutionality of a statute will be resolved in
favor of the statute.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

STATEMENT OF FACTS.

This suit questions the constitutionality of Act No. 436, passed at the 1919 session of the General Assembly. The act is entitled, "An Act Creating the Pulaski County Road Improvement District No. 10." Section 4 of this act divides the territory embraced in the entire district into six sub-districts designated as sections. The act describes the territory embraced in each sub-district and imposes upon each particular section the duty of improving certain roads located therein. Two of these sections are north and east of the Arkansas river and each includes the city of North Little Rock; while four of the sections lie south and west of the river. The city of Little Rock, which is on the south and west side of the Arkansas River, is included in all six of the sections, and it is asserted that this constitutes an arbitrary discrimination against the city of Little Rock.

A second objection is that the act is an invasion of the jurisdiction of the county court over the roads of the county, and a third objection is that certain costs and expenses are made a common charge against all the districts, whereas no authority exists under the law for imposing a tax against any particular tract of land except upon the theory that that land is to derive a benefit equal to or greater than the tax to be levied from the improvement proposed. A fourth objection is that the roads to be improved are not definitely determined by the act and that the commissioners may and probably will establish new roads. A fifth objection is that the act undertakes to improve certain streets in the city of Little Rock in connection with the roads leading into the outlying territory. A sixth objection is that sub-district No. 4 provides for the improvement of a road running near the Lonoke County line which will be beneficial to the lands of that county, but that no provision is made for requiring the lands thus benefited to bear their proportionate part of the cost of the improvement.

*Amici Curiae* assert the act is void as having conferred corporate entity and authority on the district in violation of section 2 of article 12 of the Constitution; and that the act is void in that provision is made for the appointment of a receiver to collect the taxes of any particular section if default shall be made in the payment of any bond or the interest thereon. And they further say that the act must fall because it contains certain exemptions from liability in favor of the commissioners against their negligence. And, finally, they assert that the act is void in that it contains a legislative finding that certain lands will be benefited by the proposed roads, whereas this is a judicial, and not a legislative, question.

These objections will be discussed in the order stated.

*Frauenthal & Johnson,* for appellant.

The act is unconstitutional and void because

1. It provides for one set of commissioners for six separate improvements.

2. It includes about two-thirds of Pulaski County in a road improvement district and divests the county court of its constitutional jurisdiction.

3. It calls for improving part of the streets of Little Rock, together with roads leading into both the city of Little Rock and North Little Rock so as to combine a road leading into the country surrounding these cities without giving the property owners of the city a voice in the improvement.

4. The roads leading into North Little Rock have included within the taxable area the city of North Little Rock as well as the city of Little Rock, while those leading into Little Rock include only the city of Little Rock and omit North Little Rock from its taxable area, thus making an arbitrary discrimination and distinction between the cities.

5. Section 1 of the act gives commissioners the right to build a loop without designating the route of the road which renders it void for uncertainty.

6.   Section 2 includes Pulaski property for the purpose of paying for the improvement and does not include Lonoke County property when the road runs very near the Lonoke County line.

7.   Section 2 begins at the southeast corner of section 31, township 2 north, range 11 west, which is outside the city limits of North Little Rock.   See 116 Ark. 178; 118 *Id.* 119.

*Grover T. Owens* and *J. W. House, Jr.,* for appellees.

The act is not unconstitutional for any of the reasons stated by appellant.   See 96 Ark. 418-419; 96 *Id.* 410-417, 120; *Id.* 282; 125 *Id.* 325; 133 *Id.* 380-390; 126 *Id.* 318-322; 125 *Id.* 325; 125 *Id.* 325-330; 130 *Id.* 507-517.

*Allyn Smith, amicus curiae.*

The act is unconstitutional for the reasons stated by attorneys for appellant and many others.   59 Ark. 513; art. 12, § 2, Constitution.   See also 11 Kan. 23; 74 Wis. 620; 8 Kan. 321; 134 U. S. 557; 6 Howard, 550; 12 *Id.* 537; 24 *Id.* 553; *Ib.* 663; 7 Mass. 161; 179 S. W. 486; 2 Minn. 330; 6 Peters (U. S.), 709.

*F. A. Henry* and *J. H. Carmichael, amici curiae.*

The act is unconstitutional for the reasons stated, *supra,* and others.   It infringes upon the jurisdiction of the county courts, is arbitrary and discriminatory.   89 Ark. 513.   The description of the road is vague, indefinite and uncertain.   66 Ark. 292.

SMITH, J., (after stating the facts).   It is always a question of fact, and, in a large measure, a matter of opinion, as to what lands will be benefited by a particular improvement.   Reasonable minds may, and do, differ on this question, and that difference continues to exist when the question of the amount of benefits is reached.   ˊSome one must be authorized to decide these questions, for it is inconceivable that there should ever be, or could ever be, unanimity of opinion upon a subject affording so wide a scope for difference of opinion.   The Legislature has control of this subject, and it may appoint such agencies

to make these findings as it sees proper to create, or it may make the findings on its own account, and when these findings have been made and have been properly declared in the recitals contained in legislative enactments the courts are bound thereby except for arbitrary or obvious and demonstrable mistakes. A number of cases have thus announced the law and what we have just said disposes of the last recited objection of the *amici curiae,* that the question of benefits is a judicial, and not a legislative question. Indeed, it is conceded that this court has frequently so decided, and we decline to overturn this line of cases.

Applying this test, we are unable to say that an obvious and arbitrary discrimination against Little Rock has been made. We can not say, in the face of the affirmative finding by the Legislature, that Little Rock will derive benefits from the construction of roads which are on the opposite side of the river, that no such benefits will be derived, for the city of Little Rock has direct connection with these roads over the free bridge across the river. It may be true that Little Rock will not derive as much benefit from the roads on the opposite side of the river as from those on its own side; but that is a question of fact about which we are not called upon to express an opinion. This question of benefits is one to be considered by the assessors, when the betterments are assessed, and does not arise on this appeal.

The contention that the act is an invasion of the jurisdiction of the county court is one which received deliberate consideration by the court in the recent case of *Sallee* v. *Dalton,* 138 Ark. 549, where a somewhat similar statute was under construction; and while the judges have differed, and do differ, upon this question, the majority are of the opinion that the act is not open to that objection.

Sections 6 and 7 of the act make the plans for the improvement subject to the order and judgment of the county court, and if that court should disapprove the plans of any or all of these sections that district or those

districts whose plans were disapproved could not be constructed. These sections are in fact separate districts, and it is made the duty of the county court to pass upon the plans of each of them. By section 5 it is provided that "if, for any reason, the improvement of one or more of the sections of said road as hereinbefore defined and numbered can not be carried out, it shall be the duty of the commissioners to improve the remaining sections in the manner herein set forth."

Indeed, the third objection to the act contained in the statement of facts is that separate districts are required to prorate certain expenses. The portion of the act upon which this objection is based reads as follows:

"The general expenses of the district inuring to the benefit of all sections shall be borne by the several sections in the proportion that the cost of the construction work in each section shall bear to the total cost of the construction work in all sections, and contributions from county, State and Federal aid shall be divided among the several sections according to its proportion insofar as this may not be altered by the law under which the contributions are made."

We think, however, that no legislative purpose is manifested to have one section bear any portion of the cost of any other section, for the expenses to be borne and prorated by all the sections are only "the general expenses of the district inuring to the benefit of all sections." These sections constitute separate improvements, yet they are so closely related that certain expenses will be common to them all and to effect a saving to each section it is provided 'that this common expense shall be apportioned according to the cost of the construction work. We see no constitutional objection to this arrangement.

The objection that some new road may be improved is not well taken because this can not be done without the approval of the county court. In those cases in which this court has held that new roads could not be constructed we have done so because the burden of main-

taining these roads after their completion could not be
imposed upon the county over the objection of the county
court. But if the county is willing to assume this bur-
den and the court having jurisdiction over the subject-
matter approves plans for the construction of some new
road which will eventually become a part of the county's
highways, we see no constitutional objection to changing
the route of an old road or of opening up and improving
a new one.

The objection that both streets of a city as well as
rural roads may be improved is not a valid one, and is
met by the opinions in the cases of *Nall* v. *Kelley,* 120
Ark. 282, and *Tarvin v. Road Imp. Dist.,* 137 Ark. 354, 209
S. W. 81, and *Bennett* v. *John 'on,* 130 Ark. 507.

The act can not be held invalid because certain Lo-
noke County lands which are not taxed may be benefited.
Improved roads must have termini, and the districts
which are to bear the cost of their construction must
have boundaries, and we can not say that the Legislature
has acted arbitrarily in failing to extend the boundaries
of this district into a county into which the improved
road does not penetrate.

The objection that the act offends against section 2
of article 12 of the Constitution must be considered as
having been settled against the contention of the *amicus
curiae* who makes that objection by the opinion of this
court in the case of *Carson* v. *St. Francis Levee District,*
59 Ark. 513. Counsel ask us to reopen the question
there decided; but inasmuch as that case was vigorously
contested and was presented with great zeal and ability,
and has since been regarded as one of the landmarks in
our jurisprudence, and has been looked to as authority
for the creation of numerous levee, drainage and road
districts, we decline to reconsider the question here
sought to be raised.

We need not consider here the validity of those sec-
tions of the act which provide for the appointment of a
receiver and grant immunity to the commissioners except
for wilful misconduct, for if those sections were stricken

from the act a valid working statute would remain, and by section 29 of the act it is provided that "if any provision of this act is held to be invalid it shall not affect the remainder of the act." * * * *Snetzer* v. *Gregg,* 129 Ark. 542; *Sallee* v. *Dalton,* 138 Ark. 549.

We are required to resolve all doubts in favor of the constitutionality of legislative enactments, and when we have done so we are constrained to hold that the act is not unconstitutional in any of the particulars mentioned, and the decree of the court below to that effect is, therefore, affirmed.

HART, J., (dissenting). I express my dissent in this case with very great respect for my brother judges and with a full realization and appreciation of the advantages of good roads to the citizens of the State; but as I have stated before, I consider the first duty of the court to preserve inviolate the provisions of our Constitution. In my judgment, the opinion of the majority emphasizes the necessity of the grounds of dissent of Mr. Justice WOOD and myself in the case of *Sallee* v. *Dalton,* 138 Ark. 549, to which reference is made. In my opinion there are two insurmountable reasons why the act in question should be held unconstitutional. In the first place, article 7, section 28, of the Constitution provides that the county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc. In the second place, it has been uniformly held that improvement districts are sustainable only upon the theory that the local assessments levied to pay for such improvements are imposed upon property specially and peculiarly benefited by the improvement to an amount equal to the assessment.

In the application of these principles to public roads, in *Road Improvement District No. 1* v. *Glover,* 89 Ark. 513, it was held that local improvement districts may be formed to improve public roads on the ground that such improvements may be local in character and confer special benefits on the lands within the limits of the districts independent of and unconnected with the public benefits.

Since that decision many cases relative to road improvement districts in the respect above stated have come before this court for determination, and it seems to the writer that the court has, by insensible degrees and without perceiving the progression (or at least without recognizing it), been carried step by step from the principles of law announced in the Glover case until there has been a radical departure from the limitations placed upon the formation of such districts in both the above named respects, noticeably so in the recent decisions of *Sallee* v. *Dalton,* 138 Ark. 549, the instant case, and *Reitzammer* v. *Desha Road Improvement District No. 2,* 139 Ark. 168.

In order to properly show my grounds for dissent, it becomes necessary to consider certain sections of the act which the majority opinion has omitted.

Section 3 provides that the board of commissioners to construct the improvement shall consist of five named commissioners. It provides for their term of office and that at the expiration thereof the county judge shall appoint their successors for the term of five years. The same section further provides that in case of vacancy on the board, the county judge shall appoint a successor for the unexpired term.

It may be here stated that in the case of *Reitzammer* v. *Desha Road Improvement District No. 2, supra,* the act gave the commissioners the power to name their successors. This act was sustained. So it may be taken as a holding that the commissioners have the power to perpetuate themselves, and have charge of the roads after the road is constructed. In my opinion this is contrary to both the letter and spirit of our former decisions. Article 19, section 27, provides for the formation of local improvement districts in cities and towns upon the consent of the majority in value of the property owners owning property adjoining the locality to be affected.

In *Pulaski Gas Light Co.* v. *Remmel,* 98 Ark. 317, it was held that where an improvement district in a city was organized for the purpose of improving a street, the board of commissioners acquired no control of the street

except for the purpose of making the improvement, and when that object was accomplished, the street became subject to the exclusive control of the city.

In *Shibley* v. *Fort Smith & Van Buren District*, 96 Ark. 410, the court said:

"We perceive no sound reason why the Legislature may not, without trenching upon the jurisdiction of the county court, authorize the construction of new roads and bridges as local improvements. It does not impose upon the general public the burden of maintaining the improvement, nor does it fasten upon the county court the duty of supervising and maintaining the new road or bridges as a part of the internal affairs of the county. The statute now under consideration, by its express terms, is rescued from such an objection, for it provides that the county courts of said counties may take over and acquire the bridge after it had been constructed, and maintain it as a public highway, but that, in the event the county courts do not decide to take it over, then it shall be maintained by levying annual assessments on the property benefited. It is left optional with the county courts of the two counties whether or not the control of the bridge shall be taken over, and this provision leaves unimpaired the jurisdiction of the county court over the bridge when it sees fit to exercise that jurisdiction."

There is an apparent conflict in these two cases. As we have already seen, the Constitution provides for the organization of improvement districts in cities and towns and that improvement of streets fall within the grant of the Constitution. The court held, however, that after the improvement was constructed, under the statute, the control of the street went back to the city.

In the bridge case, the court held that the county court "may" take over and acquire the bridge after it has been constructed. Now I think in order to harmonize this with the case of *Pulaski Gas Light Co.* v. *Remmel, supra,* which was a later decision, that the words, "the county courts of said counties may take over and acquire the bridge after it has been constructed," mean must

take over, etc., in order to comply with the constitutional provision that the county courts shall have original jurisdiction over all matters relating to roads, bridges, etc.   This is in application of the canon of construction that provisions of the Constitution should be construed as mandatory.   At least they should be so considered if statutes relating to a similar subject are so considered. In any event, the decision should be so construed as to allow the county court to take over the roads after they are constructed.   Now let us consider the powers of the county court as prescribed by the act.   The act is very long, and it is impracticable to set it all out, or even the whole of the sections, which I think sustain my dissent. I think the substance of the sections, which I shall state (and which I think are the ones which have a direct bearing on the subject under consideration) will show clearly the error of the majority, or at least will show more clearly than does the opinion of the majority, the grounds of my dissent, *i. e.*, that the freedom of judgment of the county court is for all practical purposes taken away by the act.

The act names the commissioners and states their tenure of office.   It provides that they shall continue in office until the roads are built and paid for.   A subsequent section provides for the issue of long time bonds for the payment of the cost of construction.   This negatives the idea that the roads are to be turned over to the county court after they are constructed.

It also provides that the commissioners shall receive $5 a day for each day they shall be actually engaged in the work of the district.   The Desha County district has been upheld and the act creating it gives the board the power to appoint their own successors.   All this manifests an intention upon the part of the legislators to place not only the construction, but the maintenance and repair of the roads in the hands of the commissioners.

Section 21 provides that as soon as the improvement has been finished, and annually thereafter until all indebtedness of the district has been paid, the commission-

ers shall make and file with the county court a statement of all moneys disbursed and containing a general report of the affairs of the district.

Section 123 of the act provides that the district is authorized to receive any part of the funds that may now or hereafter be set aside by the United States for the improvement of public roads, and any that may hereafter be set aside by the State for aid in the improvement of public roads.

Section 24 provides that no one of the commissioners shall be liable for mistake of judgment, or negligence, but only for wilful misconduct.

Section 5 provides that it shall be the duty of the commissioners to construct, repair, and improve the roads by grading, draining and surfacing them in such manner and with such materials as the commissioners deem best for the interest of the district with full power to construct bridges, culverts and all necessary appurtenances of said roads.

Section 4 of the act provides that the territory shall be divided into six sections, each of which is held in the majority opinion to be a separate and independent district but all of which have the same commissioners.

It is evident that the effect and purpose of this statute is to take all, or at least the principal roads leading into Little Rock out of the control of the county court and to place them in the hands of the commissioners named by the Legislature. But it is judicially declared in the majority opinion that this is all done subject to the approval of the county court and that, therefore, the provision of the Constitution which provides that the county courts shall have exclusive original jurisdiction in all matters relating to roads is preserved inviolate. Suppose the county court does not approve the action of the commissioners as outlined above, will it be said in future judicial decisions that he must not act arbitrarily in the matter, or will his refusal be treated as a final settlement of the matter. Suppose he does not exercise any judgment in the matter but blindly approves whatever plans

and specifications the commissioners may adopt and the road is constructed and bonds are issued for the payment thereof during his term of office. (It is a matter of common knowledge that road building in this State is in its infancy.) Suppose that on this account, or because of the ignorance or fault of the commissioners or the engineers selected by them, roads are constructed under the act which shall be found to be unsuitable or inadequate for the needs of the capital city of our great State, the roads as constructed must be paid for unless the obligation of a contract is impaired, and this is contrary both to the Constitution of the State and of the United States. Suppose the revenues for the public roads provided for by the Constitution should be augmented by some unforeseen circumstances, would the succeeding county judge be bound to continue the roads as laid out by the commissioners and bow to their will in the maintenance and repair of the same? If he must do so, where is his exclusive original jurisdiction given by the Constitution? If he could change the character of roads as, for instance, from a concrete surface to an asphalt one and could change the width of the roads, what goes with the provisions of the act which provides for the perpetual succession of the commissioners and for their payment for each day while they are engaged in the work of the district; and for their maintenance and repair of the roads? A careful reading of the act will show that the only duty the county court has to perform is to approve the action of the commissioners; and yet it is said that this does not destroy the freedom of judgment of the county court guaranteed by the Constitution. It is no answer to this to say that the best business men in the country have been selected as commissioners. What guarantee have the people that this will always be the case? The people have the right to the constitutional guarantee that the county court shall have exclusive original jurisdiction over all matters relating to roads.

Again section 28 provides that the commissioners of said district are authorized to widen any street which is

to be improved under this act, where they deem necessary to a width not exceeding eighty feet, and in case they deem any road to be improved under the provisions of this act should be widened, they shall make application to the county court for an order for the widening of the road. When the commissioners have passed the resolution widening any street, or when the county court shall have made an order widening any road, the commissioners shall call upon the assessors to assess the damages to the property taken or damaged.

It further provides that if the assessors make no assessment of damages, it shall be deemed a finding by them that no damage will accrue. It seems to me that this is clearly unconstitutional. Article 2, section 22, provides that the right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor. The Legislature has no power to divest the citizen of his right to property without first providing some legal mode for ascertaining its value. *Cairo & Fulton R. R. Co.* v. *Turner*, 31 Ark. 494. Chancellor Kent said that this principle in American constitutional jurisprudence is founded on natural equity and is laid down by jurists as an acknowledged principle of universal law. 2 Kent. Com. (8 ed.), p. 399.

The framers of our Constitution in recognition of this great principle of natural justice, which should endure as long as the Constitution should stand, said: "The right of property is before and higher than any constitutional sanction." This sacred right of property can not be taken away by a legislative declaration that if the assessors of the district make no assessment of damages, it shall be deemed a finding by them that no damage will result. Under this section the assessors through neglect, ignorance or any other cause might fail or refuse to act, and their non-action would result in the taking of private property without compensation therefor. This would be a palpable violation of the provision of the Con-

stitution last quoted. A tribunal must be furnished and the property owner given an opportunity to be heard before his property can be taken for public use. This can not be done by mere nonaction on the part of those whose duty it is to act. *Cribbs* v. *Benedict,* 64 Ark. 555. The power of eminent domain is distinguished from the power of taxation. In 15 Cyc. 559, it is said:

"The power of taxation and eminent domain have always been clearly distinguished. Sales for taxes and taking private property for public use are both referable to the sovereign power, but one is for the recovery of a debt due the government, the consideration for which is the protection of person and property, and for the enforcement of a duty by the taxpayer, the performance of which is essential to the maintenance of government; while the other is the appropriation of private property for the public use, full compensation therefor being first made. The exercise of the right of eminent domain operates upon individuals and without regard to the amount or value exacted from any other individual or class of individuals and the taking of private property for public use must always be done under judicial or quasi-judicial proceedings, while sales for taxes may be made by the summary action of the collector." See also 10 R. C. L., par. 5, p. 8.

Section 10 provides that if the commissioners shall find any land in Pulaski County beyond the limits of the district will be benefited by the improvement of any section of the roads they shall notify ten assessors to assess the benefits against such lands. This is obviously unfair, and in my judgment extends the boundaries originally planned and makes a new district. It could not be told in advance how many additional tracts of land, the commissioners might find to be benefited, which were situated outside of the original district. These additional tracts, of course, were not considered in assessing the benefits in the district as originally established. I do not think there can be any legal and proper assessment of benefits in an improvement district until its boundaries are defi-

nitely established so that the assessors can intelligently act, and the property owners be advised. They can not do so if they have in mind that other lands might eventually be placed within the limits of the district.

It is true, as stated in the majority opinion, that the act provides that if any provision of the act is held to be invalid, it shall not affect the remainder of the act, and that under it if section 18 providing for the appointment of a receiver is invalid, this would not under the rest of the act be inoperative. I agree to this view, and at the same time express the opinion that section 18 is unconstitutional because our Constitution provides officers and methods for collecting taxes and because this jurisdiction did not belong to chancery courts as they existed when our Constitution was adopted.

It is worth nothing that the concluding part of the section provides that when the receiver is discharged, the affairs of the district shall again be conducted by the commissioners. This strengthens the view that I have expressed that the evident purpose of the act is to put the several roads designated therein into separate and distinct road improvement districts and place them under the management of one set of commissioners; and also to oust the county court of its jurisdiction, or at least its freedom of judgment in the exercise of its jurisdiction, which would practically amount to the same thing.