BUSH v. DELTA ROAD IMPROVEMENT DISTRICT OF LEE COUNTY.

Opinion delivered December 15, 1919.

1. HIGHWAYS—JURISDICTION OF COUNTY COURT.—1 Road Acts 1919, page 706, creating a road district, and providing that the improvement shall be laid out on the road as now laid out or which may be laid out by the county court, and any change in the line to be approved by the county court, and also that any bridges built shall be built as approved by the county court, *held* not an infringement of the constitutional jurisdiction of the county court over county roads.

2. CONSTITUTIONAL LAW—LEGISLATIVE POWER.—The inclusion of lands within the boundaries of a road district created by the Legislature is an exercise of legislative power which the courts can not set aside.

3. HIGHWAYS—ASSESSMENT OF BENEFITS.—A bill to enjoin the commissioners of a road district from proceeding to build the road upon the ground that the assessment upon plaintiffs' lands would be burdensome and in excess of benefits was prematurely brought prior to the assessments, since the tax payers would have notice of the assessments with opportunity to complain if found to be excessive.

4. HIGHWAYS—ROAD DISTRICT—LEGISLATIVE POWER.—The Legislature has power to create and to abolish local improvement districts, and the subsequent creation of a road district embracing the territory of a prior district held to abolish it.

5. HIGHWAYS—ROAD DISTRICT—DESCRIPTION OF BOUNDARIES.—1 Road Acts 1919, page 706, in including "that part of sections 21 and 22 on the left or east bank of the St. Francis River," when read in connection with other parts of the description, means the east side of the river, and is therefore not indefinite or uncertain.

Appeal from Lee Chancery Court; *A. L. Hutchins,*
Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellants, who are property owners within the
proposed road improvement district, brought this suit in
equity against appellees, who are commissioners of said
proposed district, to enjoin them from proceeding to con-
struct the road provided for.

Appellants set out in their complaint the several
grounds which they claim render the district invalid and
there is an agreed statement of facts filed by the parties
to the effect that the allegations are true. The several
grounds of objections to the validity of the district will
be stated separately and discussed in the opinion.

The chancellor was of the opinion that the district
was valid, and it was decreed that the complaint should
be dismissed for want of equity. The case is here on
appeal.

*Roleson, Gatling & Norton* and *Daggett & Daggett,*
for appellants.

1. The act is unconstitutional and void, because it
gives the commissioners power to lay out and establish
new public roads. 120 Ark. 277.

2. A large portion of the lands are inaccessible to
the road and no benefits accrued, though they were as-
sessed. 120 Ark. 286.

3. The act does not limit the amount of money to be
expended in the construction of the road, nor does it pro-
vide the kind nor character of the road.

4. The commissioners have the power to determine
the amount of assessment absolutely.

5. The description of district is uncertain and in-
definite, and the district embraces other districts.

*House, Rector & House,* for appellees.

1. None of appellants' contentions that the act is
invalid are tenable nor are they they sustained by any
authorities. The recent cases of *Sallee* v. *Dalton, Cum-*

*nock* v. *Alexander, Reitzammer* v, *District* and *Booe* v. *Sims* settle all their contentions.

2.   As to benefits, see 98 Ark. 113 and the recent decisions in cases *supra,* mss. op.; 96 Ark. 410; 120 *Id.* 286; 100 *Id.* 366; 108 *Id.* 366; 108 *Id.* 419; 83 *Id.* 344; 133 *Id.* 118.

3.   The limitations as to the amount to be expended are fixed by law that it shall not exceed the benefits. Cases *supra;* 134 Ark. 30; 110 *Id.* 99; 113 *Id.* 193; 106 *Id.* 39; 120 *Id.* 377.

4.   The Legislature has full authority to empower the commissioners to assess for benefits.   98 Ark. 549. If the assessments were excessive, the remedy was by appeal.   127 Ark. 318.

5.   The same land can be included in two districts, but the act of 1911 creating District No. 1 is invalid under 118 Ark. 294.   See also 109 Ark. 90-97; 113 *Id.* 363; 119 *Id.* 188; 103 *Id.* 452-463.   *Van Dyke* v. *Mack,* 139 Ark. 524, is squarely in point.   See also 123 S. W. 827; 100 Ind. 380.

A subsequent act repeals a former one to the extent of its repugnancy.   72 Ark. 8; 65 *Id.* 508; 92 *Id.* 79; 76 *Id.* 34; 82 *Id.* 305.   The act creating the Delta district is a valid expression of the lawmaking power.   Cases *supra.*

HART, J., (after stating the facts).   The district in question was created by an act of the Legislature passed at its regular session in 1919 and approved March 8, 1919.   Special Road Acts of the Session of 1919, vol. 1, p. 706.

It is first earnestly insisted that the act is unconstitutional because it gives the commissioners power to lay out and establish new public roads and takes away from the county court the jurisdiction over public roads vested in it by article 7, section 28, of the Constitution of 1874.

The section complained of is section 2, and it reads as follows:

"Said district is hereby organized for the purpose of improving that part of the public roads in Lee County, Arkansas (here follows detailed description. of the roads). The improvements to be made by said district are to be made on the road as now laid out, or which may be laid out by the county court of Lee County, or substantially on this line, the nature of the improvements and any change in the line of said road to be approved by the county court of Lee County, Arkansas. The county court of Lee County shall lay out public roads along the lines. selected by the board of commissioners in the manner provided by Act 422 of the Acts of 1911 of the State of Arkansas, being "An Act to amend section 7228 of Kirby's Digest of the Statutes of Arkansas. Said highway is to be constructed of macadam or such other material as the commissioners may deem best, and they are authorized to build such bridges and culverts as they may find desirable. Any bridges built shall be built as approved by said county court. In building said highway, the commissioners may proceed by letting the work as a whole or in sections, or they may build the same, or any part thereof, with day labor and the use of such county and State convicts as may be conceded them by the State, or Lee County. In case bids are advertised for, the commissioners shall have the right to accept or reject any bid."

The proposed road which is to be constructed and improved is to be something over twelve miles in length and provision is made for the laying out of a new road to the extent of four miles on each end thereof.

It is earnestly insisted by counsel for appellants that the act provides that the commissioners shall lay out the new road and make it mandatory upon the county court to establish the roads as laid out by the commissioners and thus destroys the freedom of judgment of the county court in the matter.

In *Sallee* v. *Dalton*, 138 Ark. 549, this court held that a special act of the regular session of the Legislature of 1919, creating a road improvement district in

Randolph County, Arkansas, which provided for the construction of new roads to be established as well as the improvement of old roads already established, did not violate article 7, section 28, of the Constitution of 1874, giving the county courts exclusive jurisdiction over roads.

Section 3 of that act provides that if any part of the proposed road has not been laid out as a public road, it is hereby made the duty of the county court of Randolph County to lay the same out in accordance with Act 422 of the acts of the General Assembly of the State of Arkansas for the year 1911.

It is contended by counsel for appellants that if this section had stood alone in that act, the court would have held it to be mandatory. We can not agree with counsel in this contention. The court held that this section of the statute was merely a method of procedure for the guidance of the county court in laying out the new roads, and was not mandatory so as to deprive the county court of its freedom of judgment in laying out new roads. This is shown both by the majority opinion and the dissenting opinion in that case.

Section 5 of the act provides that if the commissioners deem it to the best interest of the district to vary the line of road, they may report that fact to the county court, and in that event, if the county court approves the report, it may make an order changing the route of the road, and, if necessary, it shall, in that event, lay out the new road in the manner hereinbefore provided. That is to say, that it should lay out the new road in the manner provided in section 3. The majority of the court held in that case that section 5 and section 3, when construed together, did not deprive the county court of the judgment and discretion in the establishment of new roads vested in it by the Constitution, and Judge WOOD and the writer maintained the contrary view in a dissenting opinion. The court deliberately construed the statute, and no useful purpose could be served by going into the matter again. A careful reading of section 2 of the act

in the case at bar will show that it is in no essential respect different from sections 3 and 5, construed in the case just referred to.

Here the section provides that the county court of Lee County shall lay out public roads along the lines to be selected by the board of commissioners in the manner provided by act 422 of the Acts of 1911. It also provides that any change of line of the road is to be approved by the county court of Lee County. It provides that the bridges shall be built as approved by the county court. Therefore, we are of the opinion that the present statute in the respect complained of is substantially like that construed in *Sallee* v. *Dalton, supra,* and that the decision in this case on this point is ruled by the decision in that case. Other recent cases sustaining *Sallee* v. *Dalton, supra,* are *Cumnock* v. *Alexander,* 139 Ark. 153; *Reitzammer* v. *Desha Road Imp. Dist. No. 2,* 139 Ark. 168; and *Hamby* v. *Pittman,* 139 Ark. 341.

The agreed statement of facts shows the following:

"That the construction of the proposed road is impracticable and not feasible; that large portions thereof run through low and swampy lands and that roads thereon can not be constructed without building such levees, embankments, bridges and culverts to such a cost as would be far in excess of any possible benefit that might accrue to adjoining lands.

"That the whole of the roads to be constructed under said act lies within the eastern part of the boundaries of the district; that practically all of the lands within the western half of the district are inaccessible to the proposed roads on account of natural obstacles lying between such lands and the proposed route of the roads, and that by reason thereof such lands can not be benefited in any manner by the construction of the roads. It is claimed, therefore, that the assessment against lands in the eastern half of the district will be burdensome and amount to confiscation."

It is earnestly insisted by counsel for appellants that, under the agreed statement of facts just quoted, the

court should have held the district unconstitutional. The act in the case at bar provides for the assessment of benefits by the board of assessors and for an equalization of these assessments upon a hearing given to all the property owners after due notice. The Legislature defined the boundaries of the district in the present case, and the inclusion of the property within the boundaries of the district was an exercise of legislative power which the court can not set aside.

In the case of *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54, the Legislature created the district, fixed the boundaries thereof, and made the assessment. It was there claimed that the act of the Legislature was such an arbitrary abuse of the taxing power as would amount to a confiscation of the plaintiff's property without any benefit whatsoever to him. The court held that, while the Legislature, in creating a drainage district, may provide what lands shall be assessed for the improvement, and the extent of such assessment, the court will interfere where the act of the Legislature is such an arbitrary abuse of the taxing power as would amount to a confiscation of property without benefits. In that case as we have already seen, the assessment of benefits was made by the Legislature, and it was held that the courts could review the action of the Legislature upon proper allegations and proof showing that the proposed district amounted to a confiscation of the plaintiff's land.

In *Myles Salt Company, Limited,* v. *Board of Commissioners of Iberia and St. Mary Drainage District,* 239 U. S. 478, the court held that the Legislature of a State may constitute drainage districts and define their boundaries, or may delegate such authority to local administrative bodies; and that such action, unless palpably arbitrary and a plain abuse, does not violate the due process provision of the Fourteenth Amendment.

The court further held that the action of the local administrative body in including land within a drainage district which is palpably arbitrary, such inclusion not being for the purpose of benefiting such land but for the

purpose of obtaining revenue therefrom, amounts to a deprivation of property without due process of law under the Fourteenth Amendment. Mr. Justice McKenna, who delivered the opinion of the court, said:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and can not be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. *Wagner* v. *Baltimore, ante,* p. 207. We are not dealing with motives alone but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

The effect of these and other decisions of the Supreme Court of the United States and of this court show that the property owner would be entitled to relief at some stage of the proceedings upon proper allegations and proof that his lands were not benefited, or that the proposed improvements taxed his lands so high as to amount to a confiscation of them. As we have already seen, under the provisions of the present act, it is provided that the commissioners shall make the assessment of benefits and damages, and that due notice thereof shall be given to the property owner in order that he may be heard. This is the time and place for the property owner to show that his property is not benefited at all or that it is taxed so high as to amount to a confiscation of it. Taxation by special assessment is defensible only upon the theory of corresponding special benefits to the property assessed. The question of benefits is a question of fact. The location and surface conditions of the lands are matters to be considered by the commissioners in assessing the lands. The present action is premature on

this question.  A full opportunity will be given to the land owner to make his complaint in this respect before the board of commissioners when his lands are assessed and the action of the board is subject to judicial review within the limits above announced upon proper allegations and proof.   Such is the effect of the holding of this court in *Harrison* v. *Abington,* 140 Ark. 115.

It is next insisted that the present district is invalid because the lands of appellants are situated in another improvement district which had for its object and purpose the improvement of the proposed road in the present district as well as other roads in Lee County.   The record does not show that the board of commissioners of that district have entered upon the work of constructing and improving the proposed road.   Under the decisions cited in this opinion as well as many other decisions of this court, it is firmly established that the Legislature has full power to establish local improvement districts and to abolish those already created.   If it be assumed that the prior district was a valid one, it may be said that the creation of the present district impliedly repealed it so far as the construction of the present proposed road is concerned.   The two statutes in this regard would be repugnant to each other, and the later act will repeal by implication the prior one.

Finally it is insisted that the boundaries of the district are not definitely described in the act, and for that reason the act is void.   For instance, it is insisted that the act defining the boundaries of the district is made indefinite by the use of the following language: "and that part of section 21 and 22 on the left or east bank of the St. Francis River."   The map shows that a part of section 21 is on the east side of the St. Francis River and part of it on the left side of the river.   All of section 22 is on the east side of the river, a corner of the section only touching the river.   When this part of the description is read in connection with the other parts, it is evident that the words, "east bank of the river," were used in the sense of east side of the river.   The same reason-

ing applies to the description of the lands bordering on "Old River."

We have examined the description and are satisfied that it is definite and certain.

It follows that the decree must be affirmed.